Our first case for the day is in re Marriage of Jeffrey Brown and Carrie Brown, 514-0062. Ready to proceed? Yes, Your Honor. Okay. When Jeff Brown filed a petition for dissolution of marriage in this case against Carrie Brown, the parties had four major assets. One asset was a marital home. The second was a residential rental property. The third was a frozen custard business just north of Alton called Shivers, sort of like a Ted Cruz kind of frozen custard. And the fourth was their pensions. There were other assets, but those were the major assets.  The right to exclusive possession of a marital home, the right to collect the rents from the rental property, and the right to run the Shivers business, which is mostly a cash business. But it also gave her the responsibility to pay the bills for the home, pay the bills for the rental property, and pay the bills for Shivers, a frozen custard place. But it also added the responsibility to provide an accounting. And these proceedings are adversarial to the point this marriage is broken. The accounting was a way of verifying, and I relate that to the old Cold War days when we were at odds with Russia and Reagan and Gorbachev were at odds, and Reagan was, I guess, famous for quoting an old Russian proverb that said, So the court trusted the wife to take care of these things but wanted verification. At the end of the case, the time of trial, the wife did a good job of collecting all the money from the rental property. She did a good job of collecting money from Shivers, the frozen custard business, but she did a lousy job of her stewardship, of paying the bills on the rental home, because it was lawless, because she didn't pay the bills. She did a poor job of paying the mortgage on the house she was given possession of, because it was lawless, because she stayed there for at least 10 months and didn't pay the mortgage. And she did a lousy job of taking care of that Shivers business, because at the time of trial, the property was in foreclosure and they were closing down the business. She did it. So three foreclosures. Correct. So there was no job done on the accounting. She never did the accounting. Now, I've been before you previously on a case in which there was an argument over what is an accounting, and at that point, and that was the King v. King case, the husband said, I'm giving you my Schedule E for my tax return, that's the accounting. And in this case, the court agreed that that's not an accounting. If the court wanted Schedule E, they would have said that's satisfactory, and accounting is more than that, especially when you're talking about a cash business, because they had to have had some history of business before of how they process the cash, and these ice cream places are typically and historically had been cash. No accounting. Now, the court ordered the wife three times, two times, to provide the accounting. First time was an initial order. Second time was a subsequent order. In addition to which, there was a third request for it by my client in which we asked for a discovery. There was no compliance. We sent her a 201-K letter. There was no compliance. And at the time of trial, she testified, I don't know what an accounting is. So at trial, we were deprived of information. In advance of trial, we were deprived of information that would have been essential to doing what we needed to do to prove to the court. Now, this information was in her exclusive possession. She might say, and she did say at one point, try to argue that, well, he could have had access to the bank account. Well, that's not an accounting, having access to a bank account. And in a cash business, it's clearly no way of knowing, because the money is not deposited. It's not in the bank account. So at the time of trial, we were faced with, the husband was faced with, no information on it, the three failed assets that were in her exclusive control. Did she ever admit that she made an accounting of any kind or explain the kind of accounting that she made? The short answer is no. She said at one point in trial, I think she said she gave it to her lawyer. Then she said that all you have to do is look at the bank account. But she never said I made an accounting or this is anything that resembles an accounting, money in, money out, profit, loss statement, nothing. As to any asset? As to the assets over which she had control, or really as to any asset, but as to any of those assets. As a matter of fact, we tried to nail her down on the fact she was getting the money from the rental property by sending her a request to admit genuineness of documents. And the documents were some checks we happened to get from the tenant that were cashed by her. So we gave her a list of checks the tenant had given and were cashed. And when she had a chance to respond to it, first of all, she didn't answer. Then she had to be ordered to answer. And then her response was to each request to admit the check and the signature. Obviously, there were photocopies because we didn't have the original. She objected to the same stock answer to each check. Authentication lacking, foundation lacking, best evidence rule, and irrelevant. Do you believe those are proper objections under Rule 216? No. Did you ever file to have them deemed admitted? I filed a motion for hearing on the objections, and then I asked the court at trial to have them deemed admitted. But it wasn't necessary because then at trial, finally she says, yeah, that's right. I cashed it. So it didn't need to go to that next step because she admitted it. So this sets the table for a lot of things. First of all, we believe the adverse inference rule as to the information she had but didn't provide should apply against her because she had sole control of the cash records, sole control, but didn't produce it. Instead, it's a two-part thing. The first part is we came in and at the beginning, not knowing the extent of the laws, we heard at trial that first her lawyer said, she's in bankruptcy now. Well, we knew that wasn't accurate. We knew that she was contemplating it. So we said, no, she's not in bankruptcy now. She's contemplating it, and the counsel agreed. Then we went on to ask about some things. We found out that more things were missing than before. So originally we said, that fourth asset, those pensions, let's split it. But then when the trial came up, it became very clear that there was no way to reimburse or compensate the husband for everything she lost or dissipated. And this is before the dissipation statute was amended or was added. So there's no way for us to do this. And it was in reference to an original temporary order which said, both parties restrained and enjoined from, by any manner, transferring, encumbering, spending, conveying, concealing, damaging, destroying, or otherwise disposing of or alienating any of the marital assets of the parties. And that was an original order in 2010. So we said to the court, well, she's done exactly what she wasn't supposed to do. She was a steward for these assets, lost every single one, kept the money. And no matter what claim she has against him, give her a set off, but she still owes us. There's no way of compensating this. Give us the pension. Give us our pension. And that's what the court did. And the trial gave us the pension. However, and that decision came 11 months, about 11 months after the evidence was heard. Any explanation for why it was 11 months? No. Okay. So at that point, there was new counsel for the wife. And Ms. Buckley was not the trial attorney I referenced before. She came in afterwards and successfully argued a post-trial motion that ended in an order that completely took away whatever offset that would have been on the benefit of the husband. And that is gave the wife half the pension. All the other assets were gone. And in addition, there are a couple other things that are swimming around here. One of them is, said, I'm not going to hold her responsible for dissipating these assets at all. And then said, by the way, Did the trial court actually rule on dissipation? No. I mean, it's just not mentioned, right? Yeah. In the beginning, the first order of the court referenced something about dissipation before a certain point, but really never went anywhere with that beyond that. But also, at a certain point, said, folks, I'm going to order a second order, the one that completely changes the benefit of the first order the court entered. Without hearing new evidence, the court said, by the way, husband, I'm going to make you pay half the private school tuition for your two kids. In addition to all this, I'm going to add on to your financial burden these people who lost the significant assets in the marriage, these people who the wife contemplated divorce. I mean, bankruptcy, and did go through bankruptcy. But that wasn't evidence at the time of trial. But was contemplated bankruptcy. We're going to have private schools for the kids, and it's going to be on your dime. The first order said, if the wife wants it, she can pay for it. She had a job at a lumber company making close to $50,000 a year in addition to access to all these assets. So what we're saying is when you look at this in a standard review, the manifest way of the evidence, there's a reasonable person would look at that and say, number one, not enforcing your own order for an accounting is not reasonable. It doesn't make sense. Two orders that say give us an accounting, it doesn't make sense. And not to apply the reasonable inference rule saying that wife, you're in control of these assets, and especially with a cash asset, you need to give us something is against the manifest way of the evidence. To then say not only is she going to have free reign of all that money, live in the house 10 months without paying the mortgage and lose the home, but we're going to make you pay more money than you should. Because at the time of the hearing, he was on unemployment. This was on unemployment. Has the judgment ever entered against him personally on any of the foreclosures? I'm confident that he was included. I didn't participate in those, so I'm guessing, but my educated guess would be yes as to each one. So as a practical matter, loss of the asset, and I believe that, but I don't want to say to the court 100% that that's the case. When people go through a divorce, they expect that if they can't use self-help to protect their assets, the court will protect them. And if they're going to assign responsibility, there's going to be a stewardship. Just like anyone who says, okay, I'm taking care of our stuff. Trust me at the end, I won't lose it. And she lost every single asset and was not held accountable for it at all. And we think for those reasons that the court, the order of it should be reversed and sent back. Now, if it was the original order the court entered, we wouldn't have appealed it. We would have said, okay, we understand. We disagree with some of it, but we understand giving him the pension because that's equitable. That's an equitable thing. But to go back and say, not only does she get to keep all that stuff, but we're going to pile on and say she gets half her pension, and you have to pay half the private school tuition you folks can't afford anyway. For those reasons, we think that the relief is appropriate that we've asked for, Your Honor. Thank you. Thank you. Ms. Griffin? May I, Coach? Yes, you may. As long as you're ready to argue. I am. Thank you. Good morning, Justices. My name is Kathleen Buckley, and this is my co-counsel, Bridget Buckley, and I am here this morning on behalf of the athlete, Carrie Brown. Are you related? Excuse me? Are you related? This is my daughter. Oh, great. Welcome. Congratulations. I wanted to answer one specific question that you asked of Mr. Faircamp right off the bat, and the question was, did Ms. Brown ever acknowledge making an accounting or state that she did make an accounting? And she did specifically testify in the common law record at page 140 that she had provided an accounting. And I think that one of the things that may have happened in this case with regards to the accounting is that Mr. Brown switched counsel on July 26, 2011, and I don't know, sometimes when lawyers are switched like that, files don't always make it from one attorney to the other. But Ms. Brown clearly did testify that she had provided the type of accounting that was required. Did you have access to it? Well, keep in mind it was not trial counsel, okay? So in the file that I got, I can't say that I had access to it. But what I do know is that she testified that she had provided an accounting, and Mr. Faircamp indicated to you that she had said that she did not provide an accounting. Well, what I'm wondering is what kind of accounting she actually supplied to the court. Are we going to see that in the record? It certainly is not in the record that you have before you. But her testimony was that she provided bank statements. She provided bank statements the day of the hearing that she was extensively questioned about by Mr. Faircamp. And if you look through the record, she provided discovery and supplemental discovery no fewer than seven times. So every time a motion to compel would be filed, a 201-K letter would come in, information was provided. The interesting thing about this accounting issue is that once Mr. Faircamp got involved in this case, it was never an issue that was raised. The last time we'll see anything in the record about an accounting is February 7th of 2011 when a motion to compel was filed by prior counsel for Mr. Brown, who was Don Roshoff. And I think one of the issues that happened here with Judge Brown since he was trying the case is Mr. Faircamp never filed a position statement. And, Justice Stewart, you asked if there was a reason why there might have been delay in the court entering an order. You'll see in the record that Mr. Faircamp was ordered to submit a closing statement to the court, a proposed finding of facts and conclusions of law, sometime after the trial court concluded its hearing, and that was never done either. So it's our position that some of these arguments that are being made by Mr. Faircamp, specifically with regards to the accounting, that those things have been waived by him because they were not brought to the attention of the trial court. And there was no position paper, which is required by the Madison County Local Court Rule 2.06, and under the Zito case that I've cited in my brief. If you don't bring issues to the attention of the trial court, the trial court has no way of knowing that those particular issues remain pending. Well, this all goes to the dissipation argument. Exactly. And, I mean, it is true. I mean, it is in the record that the house was foreclosed on, the rental property was foreclosed on, the business was foreclosed on, all of which he had control of. I cannot argue that point with you. But what I can point you to is a court order that is nowhere mentioned in Mr. Faircamp's brief, is not included in his appendix, and is not included in his statement of the facts, which is an order that was entered on February 4, 2011. I happen to have a copy right here. Go ahead. Okay. And so what that February 4, 2011 order does is that order relieves Mrs. Brown of the obligation of making the mortgage payments. Well, it says the parties are relieved of any court-ordered obligation. That is correct. And the reason for that, if you look at that order vis-a-vis the temporary order that was entered in May of 2010, what you will see is that Mr. Brown had claimed that he had a decrease in income. Mr. Brown had asked for a decrease in child support. His obligation to Mrs. Brown was reduced significantly in that court order because he had previously been ordered to pay $500 towards bills, $1,500 towards child support, $300 towards daycare. However, this new order that's entered in February of 2011 removes him of those obligations and drops his child support obligation to $1,250. What was contemplated by that order, perhaps not heartfully stated, what is in there is the parties are to consult with the bankruptcy attorney. So clearly, we're thinking at this point in time, okay, we're having problems meeting our obligations. Mrs. Brown had filed a motion to modify because she could no longer make the payments because she wasn't getting the money for Mr. Brown. Mr. Brown has asked for relief because taking one household and turning it into two, as we know in these situations, oftentimes does result in a diminished ability to meet bills. So I think it's that February 4, 2011 order that completely removes any type of an argument of dissipation from this case because she is removed of the obligation to use the rental payments or to make mortgages because she needs that money in order to be able to fund things that Mr. Brown is no longer helping her pay for. In the face of a claim of dissipation, though, doesn't she still have to account for what happened to that money? Well, and it is my understanding of the law that in order for a claim of dissipation to be validly stated, and I agree with Mr. Farringham that the notice of dissipation law was not in effect at the time they did this trial as it is right now. But my understanding is that Mr. Brown has a threshold burden of proving that she used money for non-marital purposes and that she was using money that she was not entitled to use. And I believe, again, that court order that's entered in February of 2011 gives her the permission to use that money, and so I don't believe that he reached the threshold needed in order to be able to claim dissipation or put the burden on Ms. Brown, if you will. And I believe the land wire case that I've cited in my brief sets forth more artfully than I am right now exactly what needs to be done in order for the burden to shift to her with regards to the dissipation. Well, the evidence that was presented was that she collected all the rents from the rental property. She collected whatever came into Shivers, and she made none of the payments, and they were both foreclosed on. You don't think that meets a threshold of her explaining why that happened? I do not. And the reason that I do not is because of that February 4, 2011 order where it is contemplated that that is what is going to happen and where we have two court orders going back to July of 2010 and February of 2011 where the parties are ordered to seek counsel of the bankruptcy attorneys. And they did not end up doing that together. Ms. Brown did, and you have in the record subsequently filed bankruptcy. But I believe that removes any claim that there can possibly be dissipation here because this was obviously identified as a marital venture that was going under as early as July of 2010, which is around the time Mr. Brown is asking for relief with regards to the money that he needs to be paid. The court in its March 8, 2013 order, its first order, made a direct finding that the claim for dissipation was denied. Correct? Correct. So without an accounting, how does that claim for dissipation get denied by the court? Was there an accounting? Well, again, my client testified that there was an accounting. And I believe that what the court did is the court used the evidence that was presented at the time of the trial in order to make that determination. And I believe the court, again, was at a disadvantage because the court was not necessarily aware that this accounting issue still was floating around out there because there had been such a significant amount of time since it had been presented to the, you know, since it had been raised even as an issue for the court. And because it was not specifically brought to the court's attention at the beginning of the trial, when the trial was starting, both attorneys gave a little bit of a summary to the judge. And Mr. Farrakhan did specifically mention that he had a petition for attorney fees that he wanted the judge to rule on. But he did not specifically mention anything about wanting an accounting or these petitions that were pending that he says were not ruled on with regards to the accounting issue to the judge. I think that put the judge at a disadvantage, and frankly, I think it means the claim was waived. The petition for attorney fees, though, was not heard, was it, by Mr. Farrakhan? Well, the petition for attorney fees was filed the day before court, perhaps, or the day before the trial, or perhaps the day of trial. And it was certainly something that Mr. Farrakhan discussed at the time that he was doing his sort of opening statement. I believe he was asking for attorney fees for the way that Ms. Brown answered the requests to admit in what he believed to be an invasive way, and then she did end up admitting at the time of trial that she had received those rental checks. How do you explain the drastically different court order? Was it your argument that governs the court order? Well, I'd like to believe that, but I honestly believe that what it was is bringing back the court's attention to that February 11, 2011 order. I'm sorry, the February 4, 2011 order. I think that order was completely ignored by the court when it issued its first ruling, and I believe it was ignored by Mr. Brown's counsel when he wrote his brief. As I said, when the appellant files their brief, they're supposed to include all relevant orders, whether they're favorable to them or not, and it's not even included in the brief. It's something that's completely skipped over. But the payment for a private school, when both parties seem to have little or insufficient funds to do so, seems a vast departure from the first order. Well, actually, the first order does say that both parties should pay for private school. If you read the order, the order says the evidence indicates the parties can afford private school, but the wife shall pay for it if she chooses to enroll the children in it. So the court's initial order says the parties can afford private school. The parties had stipulated in their joint parenting agreement that the children were going to attend this school. That was done at the very beginning of this case, despite the fact they argued a lot about property and things like that. Luckily, they were able to get their children issues out of the way at the beginning of the case. So March of 2010, an order is entered, a joint parenting agreement is entered, and in that agreement, the parties stipulate that the children will attend evangelical school. It's my belief that if you look at the incomes of the parties, Mr. Barron, you can't correctly testify that Mrs. Brown was earning somewhere in the neighborhood of $48,000 to $50,000 a year. If you look at the amount of child support that Mr. Brown was ordered to pay, and you consider that he was living for free because income was imputed to him, between the two of them, they had, you know, $70,000, $75,000 a year in income, and I don't think it's unreasonable, especially because the court knew bankruptcy may be contemplated and the parties' debts would be going away, to try to keep the children in the same environment where they had been. So I don't see that as an abuse of discretion, which I think is the level that the court has to, the threshold that the court has to find. And if I may, I'd like to talk about the pension issue for a minute. If you read the transcript, page 7, I believe, of the Common Law Record, and I can give you the exact page here. There's a stipulation on the record, on the record at page 132, where Mr. Farringham is the one who indicates that the parties have stipulated that they will equally divide their pensions. At no time is that stipulation withdrawn. At no time is that, you know, and there are actually formalities that have to be gone through in order for a stipulation to be withdrawn, according to the Kazabowski case, which is 93-2-126. And pursuant to that case, for a stipulation to be withdrawn, you either have to have consent of the other party, or you have to have leave of court. So there's never any consent, there's never any leave of court to withdraw this stipulation. And there's not, the pension issue is not even an issue that Mr. Farringham has raised on appeal as being an error. If you look at the topics, you know, so to speak, of his appeal, he's raised the issue of no accounting, he's raised the issue of dissipation, and he's raised the issue of the private school tuition. I don't believe this issue of the pension is properly before the court. I think it's sort of being brought in through the back door on the dissipation issue, if you will. Mr. Brown never testified that he was withdrawing his stipulation. The only thing that he testified to on a leading question from his attorney was something like, do you think it would be fair for you to keep your pension or get more of her pension? And the answer was yes. And that testimony happens at the record on page 140. So it's our position that the issue of the pension is not even properly before this court because it was not an issue that was briefed, and clearly there was no withdrawing of the stipulation. Does the record have an asset, a form that Madison County uses for assets and liabilities? Not in the record that I have seen, so I would presume that that is not included. I did not see that exhibits that were in the trial court were included as part of the record on appeal. So how are we supposed to know what the court used financially to divide this property on the first go-round and then on the second go-round? What evidence can we review if there's no formal accounting, if there's no assets and liabilities, if there's no bank statements, from what you're saying, we're in a vacuum? Well, I think you're right, and I think you're stuck with the record that you have before you, unfortunately, and I'm not sure why the exhibits were not included in the record on appeal, but I think you are stuck with the record that you have before you, which I think leads to great deference to the trial court's ruling because, as you know, abuse of discretion is the standard that you're supposed to be using here, so that you're supposed to defer to Judge Brown's discretion unless you have something to the contrary. But our Supreme Court also says the trial courts should issue orders in cases like this in a very prompt manner so that they don't forget the evidence. Absolutely. And this was 11 months? Yes, it was. And only months and months after that. Exactly. Not only was it 11 months from the time of the trial to the initial order, but I believe there was another eight months from the time of the post-trial motion until the ruling. And those are – I'm not quite sure how to address that, Your Honor. That's a frustration for attorneys as well as for you justices. It's a frustration for our clients, and I don't necessarily have an answer for that. If you could make those Supreme Court rules be enforced, I'd be happy with that. Or your local rules, but thank you. Okay. Thank you, Your Honors. Mr. Perron, can you? Thank you. A quick question. As far as this post-trial motion, I take it it was filed and there wasn't an argument, there was a hearing? That's correct. And then it was eight months after that before the decision came, after the hearing? Correct. Okay. The issue about whether the account is brought up in the record is brought up in the record, and she actually, Ms. Brown, Carrie Brown, at the Record of Proceedings at 140, I was asked, where is the accounting? And she said she wasn't aware of the order requiring her to make mortgage payments on a rental property, even though she had initialed each page and signed the last page of that order. That was at Report 142. This was brought up. It was discussed. There's no doubt that the court knew that the dissipation and the reporting were issues that were before it at the very beginning. Where is the accounting? And that's the question. There's never been an accounting. If it was so good and so well done and so clear, why didn't her attorney produce it at trial? Well, what about this February 4, 2011 order? I mean, it does say the party's court-ordered obligation to pay mortgages and bills is modified so that they do not have a court-ordered obligation. It doesn't really need the obligation. It just says it's not court-ordered anymore. They're still obligated, right? They're still obligated not to let an asset go, and the question is how do you handle it? I think by saying taking court-ordered out of it, it takes the contempt powers out of it. But you still have it. She lived in the house. She lived in the house for 10 months. If she's getting money from all the other assets and not accounting for it, I think she has an obligation. The intent was to prevent it from being a contempt of court, but it didn't say she had a free pass. It didn't say she didn't have to pay it. What about paragraph 6 of that same order? It says, Carrie shall be entitled to retain the rental income free of claim of Jeff pending further order. That's true. It doesn't say she doesn't have to pay the mortgage. Right. I know, but it does say. It doesn't relieve her of the responsibility of paying the mortgage, and that was because her argument she needed the money to pay it, but she never provided proof that she needed it. The way I read it was that at trial, she'd still have to account for it because it was money from a marital asset that had to go somewhere. And so if she doesn't have it, it doesn't have it accounted. We don't know where it went, and it still is in the pot that's called marital property. It has to be accounted for somehow. But she never changed the order. The order that never changed was that the parties were the original one, that they're adjoined from disposing of or liquidating or encumbering assets. That never changed. And by taking the action she did, and she was making approximately $50,000 a year, she allowed these every single day. It would be different if she said, you know, I did what I could. You know, we run into sometimes when parents who were ordered to pay child support don't pay it, and you look at it and you say, you didn't pay anything. You were making money. I couldn't afford it. You could afford something. She doesn't say, I could only afford this much. She decided on her own that shivers, the house, the mortgage, that she would just take it all. And that's what she decided to do, and she felt that the order in the beginning was a mere suggestion to her, not an order. So you have no idea what happened with the cash? No. No. But they say that bank statements were produced and all kinds of information were produced. Some information was produced. Not all the bank statements, but the cash receipts, something showing what they normally did when they would, at the end of the day, account for the money they made, that that business never was produced. They can say all they want they did, but if they produced it, why wasn't it reproduced? Why wasn't it brought to trial when they knew that it was an order? It wasn't a surprise. Were you trial counsel? Yes, I was. Did you issue a 237 notice? Did you bring all those documents? I did not. I think it was a 214 and 237, I believe. So I wanted it previously, and I wanted that trial. But I can't tell you for sure. That's my memory. It's been a long time, and I just don't remember. Do you have an explanation for the drastically different orders that were issued? Was any further evidence put in before the court on a post-trial motion? No. So it was just argument? Just argument. And what about Ms. Buckley's claim that your client didn't submit a position brief? He didn't submit one. In the beginning, we talked. Sometimes, but every time, what happens when we have a case, we talk to the judge about what's going on in chambers. So it's not part of the record. But we told him we didn't have this information. We filed for sanctions because she didn't provide what we needed. And so we didn't have everything, so it would be incomplete anyway. And he said, let's just go ahead and do an opening statement. Why go to trial without filing for contempt or for sanctions or to compel or something? I see you did file some motions to compel. It's a dynamic that exists in family cases. Go ahead. There's a pressure on the litigants who no longer afford the legal fees, could no longer afford the fight, and want to move on. So it's a decision that's made at that time to go forward to trial because everybody's going crazy with the case that's gone on for a couple of years. So, yeah, it was a decision that was made. Let's go forward. Let's do it. And let's hope that the court will sanction her for not producing stuff. That's what happened. Thank you. Thank you very much. Thank you all.